UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BISCAYNE CONTRACTORS, INC.,          :

        Plaintiff,                :

      v.                          :    Civil Action No. 14-mc-284 (GK)

JAMES REDDING,                       :

        Defendant.                :

## MEMORANDUM OPINION

    This case concerns the ongoing efforts of Plaintiff Biscayne Contractors, Inc. ("Plaintiff") to collect on a Final Judgment entered against Defendant James Redding ("Defendant" or "Redding") in the District Court for the Eastern District of Virginia in Case No. 13-765, Biscayne Contractors, Inc. v. James Redding. See Registration of Foreign Judgment [Dkt. No. 1]. As part of Plaintiff's collection efforts, on July 30, 2015, it obtained a Judgment of Condemnation against Garnishee Mohammed Abu-El-Hawa ("Garnishee" or "Abu-El-Hawa"). See Order Granting Plaintiff's Motion for Judgment of Condemnation [Dkt. No. 13].

    On September 2, 2015, Abu-El-Hawa filed a Motion to Set Aside the Judgment entered against him. Motion to Set Aside Judgment Entered Against Garnishee Mohammed Abu-El-Hawa ("Garnishee's Mot." or "Motion to Set Aside") [Dkt. No. 16]. On September 28, 2015,

Plaintiff filed its Opposition to Garnishee's Motion ("Opp.") [Dkt. No. 19], and on October 15, 2015, Abu-El-Hawa filed his Reply ("Reply") [Dkt. No. 24].

On October 22, 2015, Plaintiff filed a Motion for Leave to File Surreply ("Surreply")[Dkt. No. 26]. On December 1, 2015, the Court granted Plaintiff's Motion to file a Surreply and ordered the parties to file responses to questions the Court posed in the Order of December 1, 2015 Order [Dkt. No. 27]. On December 1, 2015, Plaintiff filed a Surreply [Dkt. No. 28]. On January 14, 2016, Plaintiff and Abu-El-Hawa both filed responses to the Court's December 1, 2016 Order. Plaintiff's Supplemental Brief in Opposition to Garnishee's Mot. To Set Aside Judgment ("Pl's Supp. Br.") [Dkt. No. 29]; Garnishee's Response to Questions Posed in Court's December 1, 2015 Order ("Garnishee's Resp.") [Dkt. No. 30].

Upon consideration of the Motion, Opposition, Reply, and Surreply, and the entire confusing record herein, and for the reasons that follow, Abu-El-Hawa's Motion to set Aside Judgment shall be granted in part.[1]

---

[1] Although it was not filed as a motion, Plaintiff's Opposition also included a request that the Court amend a previously entered Charging Order. For the reasons stated below, Plaintiff's request to amend the Charging Order shall be denied without prejudice.

**I.   BACKGROUND**

On March 18, 2014, Plaintiff Biscayne Contractors, Inc. filed with the Clerk of this Court a Final Judgment entered against Defendant James Redding in the District Court for the Eastern District of Virginia in Case No. 13-765, Biscayne Contractors, Inc. v. James Redding. See Registration of Foreign Judgment.

On March 31, 2014, Garnishee Mohammed Abu-El-Hawa, along with Ahmad Ayyad, entered into an agreement with Defendant Redding to purchase an interest in Defendant's company, TMB Holdings, LLC. Under the agreement, Defendant transferred to Abu-El-Hawa and Mr. Ayyad a 49% interest in TBM Holdings, LLC in exchange for a Promissory Note ("the Note") with a principal amount of $350,000 (i.e., Defendant gave Abu-El-Hawa and Mr. Ayyad a 49% interest in TBM Holdings, LLC in exchange for their promise to pay him $350,000 at a future date). According to Attachment A appended to the Note, Defendant Redding retained a 51% interest in TBM Holdings. Garnishee's Aff. at 10 [Dkt. No. 16-2].

On April 10, 2014, Plaintiff filed a Motion for a Charging Order as to Defendant's interests in several companies, including TBM Holdings, LLC. Motion for a Charging Order [Dkt. No. 2]. On May 5, 2014, the Court granted Plaintiff's Motion for a Charging Order. Charging Order of May 5, 2014 ("the Charging Order") [Dkt. No. 3]. Among other things, the Charging Order states that "TBM

-3-

Holdings, LLC shall pay and/or deliver over to Plaintiff all present and future proceeds, distributions, drawings, payments, and property to which Defendant may be entitled as a result of this interest in . . . TBM Holdings, LLC[.]" Charging Order at 2.

On May 6, 2014, Plaintiff filed the Charging Order with the D.C. Department of Regulatory and Consumer Affairs, and on August 9, 2014, Plaintiff finally delivered a copy of the Charging Order to Abu-El-Hawa.

On June 16, 2015, Plaintiff served on Abu-El-Hawa a Writ of Attachment on Judgment Other Than Wages, Salary and Commissions, by which Plaintiff sought to garnish the stream of payments due under the Note in order to satisfy its Judgment against Defendant. See Affidavit of Service [Dkt. No. 11]. Abu-El-Hawa, who was an experienced business man, did not retain an attorney and, acting pro se, failed to respond to the Writ.

On July 9, 2015, Plaintiff filed a Motion for Judgment of Condemnation Pursuant to Title 16, § 526(b) D.C. Code [Dkt. No. 12], seeking a Judgment against Abu-El-Hawa in the amount of $350,000, i.e., the value of the Note Abu-El-Hawa and his partner had executed payable to Defendant. Because Abu-El-Hawa, still proceeding pro se, did not respond to Plaintiff's Motion for Judgment, on July 30, 2015, the Court entered an Order granting the Motion. Order of July 30, 2015 [Dkt. No. 13].

On August 3, 2015, the Clerk of the Court entered a Judgment against Abu-El-Hawa in the amount of $350,000. Clerk's Judgment of August 3, 2015 ("the Judgment") [Dkt. No. 14]. Slightly less than a month later, on September 2, 2015, Abu-El-Hawa, having finally retained counsel, filed his Motion to Set Aside the Judgment, contending that the Judgment should be vacated under Federal Rule of Civil Procedure 60(b) because Abu-El-Hawa had already paid the $350,000 due on the Note and that his failure to respond to the Writ was due to "mistake, inadvertence, surprise, or excusable neglect." Garnishee's Mot. at 4 (quoting Fed. R. Civ. P. 60(b)). After requesting an extension of time, which was granted on September 28, 2015, Plaintiff filed its Opposition, arguing that the Court should not vacate the Judgment because Abu-El-Hawa did not, in fact, pay off the Note; Abu-El-Hawa's default was willful; and Abu-El-Hawa made payments in violation of the Charging Order. Pl.'s Opp'n at 3.

After requesting an extension of time, which was granted on October 15, 2015, Abu-El-Hawa filed his Reply. On October 22, 2015, Plaintiff filed his Motion for Leave to File Surreply along with a copy of the Surreply itself, which was granted on December 1, 2015 [Dkt. No. 27], and the Surreply was filed the same day.

## II.   STANDARD OF REVIEW

"Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure a district court is permitted to 'relieve a party or its legal representative from a final judgment, order, or proceeding' on one of six enumerated grounds." Jarvis v. Parker, 13 F. Supp. 3d 74, 77 (D.D.C. 2014) (quoting Fed. R. Civ. P. 60(b)). What is relevant in this case is that Rule 60(b) permits a Court to vacate a judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason that justifies relief." Fed. R. Civ. P. 60(b). "The party seeking relief under Rule 60(b) bears the burden of showing that he or she is entitled to the relief." Jarvis, 13 F. Supp. 3d at 77 (citing Norris v. Salazar, 277 F.R.D. 22, 25 (D.D.C. 2011).

## III.   ANALYSIS

### A.   Garnishee's Motion to Set Aside

Although Abu-El-Hawa is not the defendant in Plaintiff's action, the Judgment against him arose from his failure to respond to Plaintiff's filings, and thus, it is properly regarded as a default judgment. "Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing." Jackson v. Beech, 636 F.2d 831, 835 (D.C. Cir.

1980). "Modern courts are also reluctant to enter and enforce judgments unwarranted by the facts." Id.

In exercising the discretion to grant relief from a judgment courts should consider (1) whether the alleged defense is meritorious, (2) whether the default was willful, and (3) whether a set-aside would prejudice the plaintiff. Keegel v. Key W. & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980) (setting forth three factors as they apply to motions to set aside under Fed. R. Civ. P. 55(c)); Int'l Painters & Allied Trades Union & Indus. Pension Fund v. H.W. Ellis Painting Co., 288 F. Supp. 2d 22, 26 (D.D.C. 2003) (applying Keegel factors to motion under Rule 60(b)).

### 1. Merits of the Alleged Defense

By his own admission, Abu-El-Hawa failed to respond to Plaintiff's filings and to make an appearance when he should have. For that reason, he faces a Judgment in the amount of $350,000. However, Abu-El-Hawa claims to have a meritorious defense against the Judgement because he paid off the Note that gives rise to that Judgment. He claims he has already paid $350,000 as the Note requires, and if the Judgment stands, he will have to pay another $350,000 to Plaintiff, Defendant's creditor.

Needless to say, if he is correct, $350,000 would be a sizable "penalty for [a] delay[] in filing." Jackson, 636 F.2d at 835. If

Abu-El-Hawa did in fact pay the same debt earlier, and therefore would be paying it twice if the Judgment stands, the situation would weigh strongly in favor of granting relief. <u>Wrecking Corp. of Am., Virginia v. Jersey Welding Supply, Inc.</u>, 463 A.2d 678, 680 (D.C. 1983) ("[A] critical factor for this court [the D.C. Court of Appeals] to consider in reviewing the trial court's exercise of discretion is whether the garnishee was in fact indebted to the judgment debtor or possessed any property belonging to the debtor.").

Many of the payments Abu-El-Hawa states were made in satisfaction of the Note were made from accounts bearing the names of Abu-El-Hawa's business interests rather than his personal account, and the vast majority of those same payments were made to Defendant's creditors rather than directly to Defendant himself as required in the Note.

According to Plaintiff, none of these payments count as performance in satisfaction of the Note. Plaintiff points to language in the Note stating "Ahmad Ayyad and Mohammed Abu-El-Hawa [] promise[] to pay to the order of James T. Redding [] . . . the principal amount of Three Hundred Fifty Thousand Dollars and 00/100 Cents[.]" Garnishee's Aff. at 5. Plaintiff takes this language to mean that only a check drawn on Abu-El-Hawa's personal account

made payable to James Redding could satisfy the $350,000 debt owed under the Note.

While it is true that the record is not entirely clear as to whether all of the payments Abu-El-Hawa claims were made in satisfaction of the Note, Plaintiff is wrong that none of them were.

It is black letter contract law that an obligor (in this case, Abu-El-Hawa) may fulfill his contractual obligations through performance that does not conform precisely to the terms of the contract. See Restatement (Second) of Contracts § 278(1) (1981) ("If an obligee accepts in satisfaction of the obligor's duty a performance offered by the obligor that differs from what is due, the duty is discharged."). Moreover, the fact that payments might have come from Abu-El-Hawa's business interests -- that is, from distinct legal persons—or institutions--does not preclude those payments from satisfying the Note. See id. § 278(2) ("If an obligee accepts in satisfaction of the obligor's duty a performance offered by a third person, the duty is discharged . . .").[2]

---

[2] Abu-El-Hawa's payments from his business interests to Defendant's creditors might also be characterized as a "novation," which the Restatement (Second) of Contracts defines as a substituted contract that includes as a party one who was neither the obligor nor the obligee of the original duty." See Restatement (Second) of Contracts § 280 (1981). "A novation discharges the original duty[.]" Id. Comment b.

Thus, as long as Defendant accepted payments made by Abu-El-Hawa's business interests (rather than by Abu-El-Hawa himself) as well as payments made to Defendant's creditors (rather than to Defendant himself), then those payments would serve to satisfy Abu-El-Hawa's obligations under the Note.

Abu-El-Hawa has offered sufficient proof that at least some of his payments satisfied these conditions. Abu-El-Hawa states in his affidavits that "the $350,000 owed pursuant to the promissory note generally went to pay creditors of TBM Holdings, LLC [in which Defendant still maintains a 51% interest] as of March 31, 2014," Abu-El-Hawa Aff. ¶ 10 [Dkt. No. 16-2], and that "[p]ayments against the Note were made to creditors of Mr. Redding and his companies pursuant to Mr. Redding's explicit request." Abu-El-Hawa Decl. ¶

---

Illustrations to § 280 demonstrate clearly that payment from someone other than the obligor and payment to someone other than the obligee may serve to satisfy a duty owed under the original contract. See id. Illustration to Comment d. ("A owes B $1,000. B promises A that he will discharge the debt immediately if C will promise B to pay B $1,000. C so promises. There is a novation under which B's and C's promises are consideration for each other and A is discharged."); id. Illustration to Comment f. ("A owes B $1,000 and B owes C $1,000. A promises B and C that he will assume B's debt to C if B promises to discharge A's debt to B and if C promises to discharge B's debt to C and accept A as his debtor. B and C so promise. There is a novation under which A's promise and B's and C's promises are consideration for each other, and A's debt to B and B's debt to C are discharged."). Accordingly, under a novation theory, payments from businesses associated with Abu-El-Hawa to Defendant's creditors would have served to satisfy the Note as well.

1 [Dkt. No. 30-1]. For these reasons, Abu-El-Hawa claims, "I am not indebted to Defendant[.]" Abu-El-Hawa Aff. ¶ 11. Abu-El-Hawa also cites Defendant's deposition testimony, which is not challenged by Plaintiff, to show that he accepted Abu-El-Hawa's payments on the Note. [Dkt. No. 12-3] at 8.

Plaintiff does not challenge Abu-El-Hawa's statements and Defendant's deposition testimony with contrary deposition testimony or competing affidavits. Instead, Plaintiff relies mainly upon its theory that Abu-El-Hawa could not tender -- and Defendant could not accept -- any performance in satisfaction of the Note other than a personal check from Abu-El-Hawa made out directly to Defendant. Pl.'s Opp'n at 10-11.

For the first time in its Supplemental Brief, Plaintiff cites D.C. Code § 28:3-602 and § 28:3-301 in support of its theory. Plaintiff argues that a promissory note may only be satisfied through payments made to "person[s] entitled to enforce" the promissory note. D.C. Code § 28:3-602. A "person entitled to enforce" means "(i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 28:3-309 or 28:3-418(d). D.C. Code § 28:3-301.

Although Plaintiff argues that none of the parties allegedly paid in satisfaction of the Note and accepted by Defendant fit into any of these categories, it has not provided any evidence to support that argument.   In contrast, Garnishee has provided statements and testimony indicating that neither he nor Defendant disputes that TBM's creditors were entitled to receive payments on the Note.   Thus, Plaintiff's mere theory of Abu-El-Hawa's obligations under the Note is not enough to condemn Abu-El-Hawa to pay the full amount of his substantial obligation twice.

Nonetheless, the Court does not hold that Abu-El-Hawa has, in fact, satisfied all of the terms of the Note. Other defects with payments he claims to have made in satisfaction of the Note remain. Opp. At 11. Abu-El-Hawa submitted 5 payments totalling $18,855.98 made before the Promissory Note was signed. The terms of the Note do not contemplate satisfaction by past payments, and in fact the terms appear to require future payment. See Garnishee's Aff. at 5-12. Abu-El-Hawa's defense as to these payments would not be meritorious and the Judgment of Condemnation will stand against these payments.

Plaintiff also asserts that Defendant owned only 51% of TBM Holdings, LLC (a.k.a. Driftwood Kitchen), and was only responsible for 51% of its debts. Thus, Plaintiff argues that only 51% of the payments to creditors of TBM Holdings, LLC can constitute a payment

-12-

by Abu-El-Hawa on the Note. If this were true, the Court assumes that Abu-El-Hawa should only get credit for a portion of the payments made by MAAJ, Inc.[3] (a.k.a. DarNa Restaurant and Lounge) corresponding to Defendant's ownership interest in MAAJ, Inc.

Abu-El-Hawa asserts that the payments made to creditors of TBM Holdings, LLC were for debts incurred prior to the transfer of the 49% interest. He makes no parallel assertions with regard to the payments made by MAAJ, Inc. The Court finds that this defense might be meritorious if it were supported by appropriate documentation. At this time, the briefing and evidence submitted by both parties is inconclusive on this issue. The Court will reverse the Judgment of Condemnation as to these payments, and will accept further submissions by both parties as to what percentage of these payments can satisfy the Note.

## 2. Willfulness

Although Abu-El-Hawa's payment history and affidavit suggest strongly that a Judgment in the full amount of $350,000 is not supported by the facts, the Court must next consider whether Abu-El-Hawa's failure to respond to the Writ of Attachment on Judgment Other Than Wages, Salary and Commissions and its accompanying

---

[3] DarNa Restaurant and Lounge is the d/b/a for MAAJ, Inc., another restaurant owned in part by both Defendant and Abu-El-Hawa. Twelve of Abu-El-Hawa's alleged payments on the Note were made by MAAJ, Inc. or DarNa Restaurant and Lounge.

interrogatories ("the Writ") [Dkt. Nos. 9, 11] was sufficiently willful to preclude relief. The Court concludes that it was not.

"The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." Int'l Painters, 288 F. Supp. 2d at 26 (citing Gucci Am., Inc. v. Gold Center Jewelry, 158 F.3d 631, 634 (2d Cir. 1998)). In order to discern on which side of the boundary Abu-El-Hawa's conduct falls, both Parties point to an opinion from the Court of Appeals for the District of Columbia: Wrecking Corp. of Am., Virginia v. Jersey Welding Supply, Inc., 463 A.2d 678 (D.C. 1983).

In Wrecking Corp., the D.C. Court of Appeals overturned a trial court's denial of Wrecking Corporation of America's ("Wrecking Corp.") motion to reconsider a judgment of condemnation in the amount of $5,271.70 entered against Wrecking Corp. 463 A.2d at 678-79. Like Abu-El-Hawa, Wrecking Corp. produced evidence showing that it neither owed a debt to the judgment debtor nor held property belonging to it, but, again like Abu-El-Hawa, Wrecking Corp. had failed to respond to the plaintiff's writ of attachment. Id. Unlike Abu-El-Hawa, however, Wrecking Corp. did respond to the plaintiff's motion for a judgment of condemnation. Id. On those facts, the D.C. Court of Appeals held that "the trial

-14-

court abused its discretion in not vacating the judgment of condemnation." Id. at 680.

Abu-El-Hawa's failure to respond even after being served with Plaintiff's Motion for Judgment of Condemnation is significant. However, while Abu-El-Hawa, who was unrepresented by counsel until shortly before filing his Motion to Set Aside, failed to formally respond to Plaintiff's filings, he did cooperate with Plaintiff's counsel and provided responses to Plaintiff's discovery requests on a number of occasions beginning in late 2014.

For example, on December 19, 2014, Abu-El-Hawa provided documents to Plaintiff. Garnishee's Aff. at 14-38 [Dkt. No. 16-2]. He provided additional information to Plaintiff in early 2015, and on June 23, 2015, sent Plaintiff copies of checks evidencing other payments on the Note. Id. at 44-70. Even while Abu-El-Hawa was neglecting his duty to respond to Plaintiff's Motion for Judgment of Condemnation, which was filed on July 9, 2015, he sent Plaintiff additional evidence of payments on the Note on July 15, 2015 and August 10, 2015. Id. at 72-86.

Thus, despite Abu-El-Hawa's failure to formally respond to Plaintiff's filings, he actually provided Plaintiff with much of the information it sought. Abu-El-Hawa's informal cooperation definitely cuts against a finding of willfulness.

-15-

However, Plaintiff contends that Abu-El-Hawa demonstrated willfulness by making a payment to Defendant from the assets of TBM Holdings, LLC in violation of the terms of the May 5, 2014 Charging Order. Plaintiff contends, and Abu-El-Hawa does not deny, that Abu-El-Hawa did not receive actual notice of the Charging Order until August 9, 2014. The Court has not seen any evidence that Abu-El-Hawa, operating pro se, had any knowledge of the restrictions of the Charging Order before August 9, 2014 or of any obligations associated with these proceedings before that date. Therefore, the Court finds that Abu-El-Hawa did not willfully fail to respond before he had actual notice of the Charging Order and these proceedings. However, Abu-El-Hawa's decision to direct TBM Holdings, LLC to make payments in violation of the Charging Order after he had actual notice does cut in favor of a finding of willfulness.

Finally, Abu-El-Hawa did not unreasonably delay in his attempt to set aside the Judgment after it had been entered. The Clerk of Court entered the Judgment against Abu-El-Hawa on August 3, 2015. Having finally hired an attorney, less than a month later on September 2, 2015, Abu-El-Hawa filed his Motion to Set Aside Judgment entered against him.

Thus, the Court finds that Abu-El-Hawa's failure to respond was willful after August 9, 2014, when he had actual notice of the

Charging Order, and by extension of these proceedings. The Court's Judgment of Condemnation will therefore stand as to the $59,000 in payments Abu-El-Hawa made after August 9, 2014.

As to the remaining payments, while Abu-El-Hawa unquestionably failed to comply with his duty to respond to Plaintiff's filings, his failure was not so willful as to merit the penalty of potentially paying the full $350,000 debt twice. The Judgement of Condemnation is therefore reversed as to the remaining $272,144.02 that was neither paid before the date of the Note (see supra at 12) nor after Abu-El-Hawa had actual notice of the Charging Order.

### 3. Prejudice to the Plaintiff

Finally, the Court must consider any prejudice to Plaintiff that granting Abu-El-Hawa's Motion to Set Aside would cause. As the facts above make clear, it would appear that Abu-El-Hawa has already paid a large portion of the amount due on the Note. Substantively, therefore, setting aside the Judgment would not prejudice Plaintiff as much as deny it the opportunity to receive a windfall in the form of an additional source from which to collect on its Final Judgment against Defendant James Redding.[4]

_____

[4] The Court is well aware that Defendant is currently incarcerated for two years.  However, that information is of no relevance in this instance.

-17-

Accordingly, the Court concludes that partial relief from the Judgment entered against Abu-El-Hawa is justified under Rule 60(b).

### B. **Plaintiff's Request to Amend the Charging Order**

In its Opposition, Plaintiff requests that the Court clarify the Charging Order to state that Plaintiff has a lien on 100% of TBM Holdings, LLC rather than just the 51% retained by Defendant. Defendant's sale of a 49% interest in TBM Holdings, LLC on March 31, 2014 preceded issuance of the Charging Order on May 5, 2014, so it is not clear why the lien should extend to Abu-El-Hawa's interest in TBM Holdings, LLC. Plaintiff appears to contend that a lien against Defendant's interest would extend to Abu-El-Hawa's interest until the Note was fully satisfied. However, because the record and the Parties' briefs on these points remain unclear, the Court denies Plaintiff's request without prejudice. Plaintiff remains free to renew its request as a separate motion.

### IV.  CONCLUSION

For the foregoing reasons, Abu-El-Hawa's Motion to Set Aside Judgment shall be **granted in part and denied in part;** and Plaintiff's request that the Court amend the Charging Order shall be **denied without prejudice.** The Judgment entered against Abu-El-Hawa shall be reversed and reduced by $272,144.02. The Judgment of

-18-

Condemnation shall be amended to $77,855.98. An Order shall accompany this Memorandum Opinion.


November 29, 2016

*Gladys Kessler*
Gladys Kessler
United States District Judge


**Copies to**: attorneys on record via ECF